JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. SA CV 14-1818-DOC (RNBx)                                Date: March 2, 2015

Title: MARCELA REYNA V. FORE GOLF MANAGMENT, INC. DBA DAVID L. BAKER MEMORIAL GOLF CENTER, ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES [23]**

      Before the Court is Plaintiff Marcela Reyna's Motion to Remand and Request for Attorney's Fees (the "Motion"). Dkt. 23. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. After reviewing the motion, opposition, and reply, the Court hereby GRANTS the Motion.

## I.    Background

      This case involves wage and hour claims brought by Plaintiff Marcela Reyna ("Plaintiff") on behalf of a putative class against several defendants, including Fore Golf Management, LLC dba David L. Baker Memorial Golf Center, Micke Grove Golf Links, Meadowlark Golf Club, and Shandin Hills Golf Club (the "FGM Defendants").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1818-DOC (RNBx)                                Date: March 2, 2015

Page 2

On May 5, 2014, Plaintiff filed her initial class action complaint in Orange County Superior Court. Dkt. 1, Ex. A. In her complaint, Plaintiff asserts putative class claims for failure to provide meal and rest periods, failure to pay vested vacation time, failure to provide and maintain accurate wage statements, failure to pay all wages upon termination of employment, and violation of California's unfair competition law. *Id.* The complaint also states a representative claim for civil penalties under California's Private Attorney General Act of 2004 ("PAGA").

On November 14, 2014, after Plaintiff amended her complaint to add several defendants, the FGM Defendants filed a notice of removal. Dkt. 1. The notice of removal asserted federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Id.* On January 23, 2015, Plaintiff filed the Motion, challenging only the FGM Defendants' assertion that the amount in controversy exceeds the $5,000,000 minimum established by CAFA. Dkt. 23. On February 9, 2015, the FGM Defendants filed an opposition. Dkt. 27. On February 17, 2015, Plaintiff filed a reply. Dkt. 29.

## II.     Legal Standard

### A.     Removal Under CAFA

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to federal court so long as the case originally could have been filed in federal court. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997). Under CAFA, federal district courts have original jurisdiction over any civil action in which: (a) a class action is being asserted on behalf of 100 or more members; (b) any member of the purported plaintiff class is a citizen of a state different from any defendant; and (c) the aggregated amount in controversy exceeds $5,000,000 exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5), (d)(6), 1453(a), 1453(b).

Ordinarily, courts "strictly construe the removal statute against removal jurisdiction" and apply a "'strong presumption' against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547, 554 (2014). Although there is no antiremoval presumption in CAFA cases, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The removing party may accomplish this showing by submitting evidence, "including affidavits or declarations, or other 'summary-

Case 8:14-cv-01818-DOC-RNB Document 32 Filed 03/02/15 Page 3 of 7 Page ID #:437

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1818-DOC (RNBx)                                Date: March 2, 2015

Page 3

judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Under this framework, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

### B. Attorney's Fees and Costs

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[A]n award of fees under § 1447(c) is left to the district court's discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

## III. Analysis

As a preliminary matter, the FGM Defendants ask the Court to strike the entire Motion because Plaintiff used a 12-point font size instead of 14-point as required under Local Rule 11-3. If Plaintiff had used the correct font size, the FGM Defendants argue, her Motion would exceed the 25-page limit set forth in Local Rule 11-6. Although the Court has discretion to strike documents for failure to comply with the Local Rules, it need not do so. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."). The Court declines the FGM Defendants' request. As discussed below, this case does not belong in federal court. Striking the Motion would unnecessarily delay the Court determining jurisdiction under CAFA.

### A. Removal Under CAFA

In their notice of removal, the FGM Defendants provide a detailed, claim-by-claim calculation concluding that the amount in controversy is at least $10,543,661.63. Dkt. 1.

The Motion challenged the FGM Defendants' calculation on several fronts, arguing: (1) the FGM Defendants improperly included civil penalties under PAGA in their calculation; (2) even if civil penalties are included in determining the amount in controversy, only 25% of the penalties should be considered because, under PAGA, only 25% of recovered penalties go to the "aggrieved employees"—the other 75% must go to the California Labor and Workforce Development Agency; (3) the FGM Defendants'

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1818-DOC (RNBx)                                             Date: March 2, 2015
                                                                                                                                              Page 4

calculations fail to account for key variables and use flawed assumptions about violation rates; (4) civil penalties for meal period violations cannot be included in the amount in controversy because the FGM Defendants have already paid penalties for those violations pursuant to an order issued by California's Labor Commissioner; (5) the FGM Defendants' calculations of civil penalties do not take into account the one-year statute of limitations for the alleged violations and effectively double-count certain violations; (6) the FGM Defendants' calculation of attorney's fees is speculative.

In their opposition, the FGM Defendants acknowledged the error in failing to account for the statute of limitations in their initial calculation of the amount in controversy. Accordingly, they provided a revised calculation of the amount in controversy which takes into account the statute of limitations: $5,018,759.82. The FGM Defendants' revised calculation is summarized in the chart below:

| FGM Defendants' Revised Calculation | | |
|---|---|---:|
| Plaintiff's Claim | | Amount |
| Unpaid Wages | | $598,414.70 |
| PAGA Penalties | Waiting Time | $306,693.16 |
| | Meal/Rest Periods (§ 2699) | $1,068,600.00 |
| | Inaccurate Wage Statement | $548,000.00 |
| | Copy of Wage Statement | $890,500.00 |
| | Rest Period Violation (§ 558) | $534,300.00 |
| | Inspection of Records | $68,500.00 |
| Attorney's fees | | $1,003,751.96 |
| TOTAL AMOUNT IN CONTROVERSY | | $5,018,759.82 |

By her PAGA claim, Plaintiff seeks civil penalties for various violations of the California Labor Code. In their initial and revised calculations, the FGM Defendants used the penalty amounts provided in certain sections of the Labor Code to estimate potential civil penalties they could face. Some provisions of the Labor Code provide for a specific civil penalty for a violation. For example, Labor Code § 558 subjects an employer to civil penalties for violating §§ 500-558 or any provision regulating hours and days of work in any order of California's Industrial Welfare Commission. Section 558 establishes a $50 penalty for any "initial violation" and a $100 penalty for each "subsequent violation."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 14-1818-DOC (RNBx)                                                          Date: March 2, 2015
                                                                                                                                                                                    Page 5

Labor Code § 2699(f) serves as a catchall. It establishes, for any violation of a provision of the Labor Code that does not have a specific penalty, a civil penalty of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699.

      In estimating potential civil penalties in their revised calculation, the FGM Defendants take into account the following factors: (1) during the relevant time period, the FGM Defendants had approximately 137 non-exempt employees; (2) the statute of limitations for civil penalties is one year; (3) the FGM Defendants' non-exempt employees are paid bi-weekly for approximately 26 pay periods per year. Based on these figures, the FGM Defendants calculate the potential civil penalties under Labor Code § 2699 as follows: (137 employees x $100 each initial alleged violation x 26 pay periods x 1 year) + (137 employees x $200 each subsequent violation x 26 pay periods x 1 year) = $1,068,600. The FGM Defendants' calculation erroneously assumes that *both* the $100 initial violation penalty *and* the $200 subsequent violation penalty could be assessed for each aggrieved employee per pay period during the same year. That assumption is contrary to the plain language of the statute. Under § 2699, depending on the circumstances, an employer may be assessed a penalty of *either* $100 *or* $200—not both—for a single violation as to an aggrieved employee in a single pay period.[1] The FGM Defendants do not provide any authority to the contrary. In fact, the double counting of penalties appears to be a mathematical error because the FGM Defendants do not even argue in their brief that they could be assessed both an initial and subsequent penalty for the same pay period—the assumption is implicit in their mathematical calculation only. The FGM Defendants repeat the error in their calculation of civil penalties under Labor Code § 558.

      The FGM Defendants' miscalculation is significant. Accepting all of the FGM Defendants' other evidence and assumptions, while correcting for this error in calculating civil penalties, the estimated amount in controversy is $4,350,884.82. The chart below

---

[1] While very few cases have interpreted the meaning of the terms "initial violation" and "subsequent violation," *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008) is instructive. In *Amaral*, the court interpreted Labor Code §§ 210 and 225.5, which provide for civil penalties against an employer who fails to pay wages of an employee or withholds wages due an employee. Like § 2699, §§ 210 and 225.5 provide a separate penalty for an "initial violation" than a "subsequent violation." In affirming the trial court's assessment of penalties against the defendant at the "initial violation" rate, the *Amaral* court's analysis assumed the correct assessment of penalties under the statutes is *either* the initial violation rate *or* the subsequent violation rate, not both. *Id.* at 1207-09.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1818-DOC (RNBx)            Date: March 2, 2015
           Page 6

summarizes a recalculation of the amount in controversy based on the FGM Defendants' own evidence and assumptions (including a 25% rate for calculation of attorney's fees), while correcting for the error in calculating civil penalties under §§ 2699 and 558.

| Court's Recalculation | | |
|---|---|---|
| Plaintiff's Claim | | Amount |
| Unpaid Wages | | $598,414.70 |
| PAGA Penalties | Waiting Time | $306,693.16 |
| | Meal/Rest Periods (§ 2699)* | $712,400.00 |
| | Inaccurate Wage Statement | $548,000.00 |
| | Copy of Wage Statement | $890,500.00 |
| | Rest Period Violation (§ 558)* | $356,200.00 |
| | Inspection of Records | $68,500.00 |
| Attorney's fees | | $870,176.96 |
| TOTAL AMOUNT IN CONTROVERSY | | $4,350,884.82 |

*Note: The Court's recalculation assumes the higher "subsequent violation" rate could be assessed against the FGM Defendants.

This recalculation of the amount in controversy results in a figure below the jurisdictional limit. Accordingly, the Court finds the FGM Defendants have not met their burden of showing by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million. Because of this conclusion, the Court declines to address Plaintiff's other challenges to the FGM Defendants' evidence and assumptions in their estimate of the amount in controversy.

Therefore, the Court GRANTS Plaintiff's motion for remand.

### B. Attorney's Fees and Costs

Plaintiff requests attorney's fees incurred in filing the Motion in the amount of $11,000. Dkt. 23-1. "Absent unusual circumstances, courts may award attorney's fees [for wrongful removal] only where the removing party lacked an objectively reasonably basis for seeking removal." *Martin*, 546 U.S. at 141. The Court concludes that the FGM Defendants' errors in overlooking the statute of limitations and double-counting of civil penalties are not objectively reasonable. The Court finds it appropriate to require the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV 14-1818-DOC (RNBx)                                                           Date: March 2, 2015
                                                                                                                                    Page 7

FGM Defendants to pay just costs expenses incurred as a result of the removal. *See* 28 U.S.C. § 1447.

       Plaintiff submitted a declaration from attorney Brittney Williams stating that she and attorney Farzad Ragestar anticipated incurring $11,000 in litigating the Motion. Of that amount, Ms. Williams stated that $6,425 was incurred for the time spent by Ms. Williams and Mr. Ragestar in researching for and preparing the Motion. In her declaration, Ms. Williams allotted and additional $2,400 for 8 hours for her to draft a reply and appear at the hearing for the Motion as well as $2,175 for 3 hours for Mr. Ragestar to prepare the reply and appear at the hearing. As the Motion was resolved without a hearing, Plaintiff's allotment of costs for attending the hearing will not be included in the award just costs and fees. In her declaration submitted with Plaintiff's reply brief, Ms. Williams could have, but did not, separate the amount of time spent on the reply brief from the amount of time anticipated for the hearing. Nor did Ms. Williams state the actual amount of time spent on the reply brief. Accordingly, in determining just costs and actual expenses incurred as a result of the removal, the Court does not consider the 11 hours ($4,575) Plaintiff allotted in anticipation of preparing the reply brief and attending the hearing.

       Therefore, the Court GRANTS Plaintiff's request for attorney's fees and costs in the amount of $6,425.00.

**IV.**     **Disposition**

       For the foregoing reasons, the Court GRANTS Plaintiff's Motion. Plaintiff is awarded just costs and expenses in the amount of $6,425.00.

       The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                                Initials of Deputy Clerk: djg
CIVIL-GEN